## LINARES et al. v. SUCESORES DE BIANCHI.

(Circuit Court of Appeals, First Circuit. March 15, 1921.)

No. 1453.

Partnership ⟷227—Contract to convey interest in partnership business held contingent on exercising existing option.

A letter in behalf of a partnership, which supposed it had a short option to purchase a sugar plantation at a low figure, confirming an agreement to cede to plaintiffs, who had aided in securing credit for the amount necessary to exercise the option 10 per cent. interest in the business if it was carried out, agreed to give such interest only in the event the option was exercised, so that the partnership was not obliged to convey the interest when, after discovering its option was unenforceable, it renewed negotiations and ultimately purchased the plantation at twice the option price, securing credit from the same bank which had agreed to give credit for the former deal.

Appeal from the District Court of the United States for the District of Porto Rico; Peter J. Hamilton, Judge.

Suit by Julian Linares and another against Sucesores De Bianchi for specific performance of a contract. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

Jorge V. Dominguez, of San Juan, P. R., for appellants.

Benjamin F. Norris, of New York City (Cay Coll Cuchi, of San Juan, P. R., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ANDERSON, Circuit Judge. This is a suit in equity filed in the District Court for the District of Porto Rico on March 9, 1917, seeking specific performance of an alleged written contract for the conveyance of a 10 per cent. interest to the two plaintiffs in equal shares in the property and business of Central Coloso, a large sugar plantation and mill in Porto Rico.

The decision below was that plaintiffs had made out no case in equity, and the bill was dismissed; plaintiffs appealed.

The record is obscure, inconsistent, replete with incompetent and immaterial evidence, and generally unsatisfactory. But the conclusion we have reached enables us to avoid the most confusing of these defects. The real case is within narrow compass. It turns on the construction of a written contract consisting of two letters.

The plaintiff Luzunaris is a citizen of New York, and familiar with Spanish. The plaintiff Linares is a citizen of Spain, with substantial business connections in Cuba and New York City. The defendants are a partnership in Mayaguez, Porto Rico, who had, or thought they had, in the spring of 1916 an option, to expire not later than June 15, 1916 (the exact date is left uncertain), to buy the Central Coloso for $700,000 or less—$672,000 and $662,000 are also referred to as the option price. Central Coloso is said to be assessed for taxation at over $1,400,000. It was owned or controlled in Paris. The price named in the supposed option was very low, promising large profits to the defendants if they could take it up. They lacked the necessary capital or credit. Thereupon the defendant, Juan Bianchi, a general partner, not speaking or understanding English, came to New York to raise the necessary funds, about $370,000. Luzunaris was an old friend of Juan Bianchi, and acted as interpreter and a sort of agent in efforts to obtain the requisite funds. A little later the help of Linares was invoked. After several unsuccessful attempts elsewhere, arrangements for the desired credit were made on June 8, 1916, with the Royal Bank of Canada, which had a branch in New York, another in Mayaguez, and its main office in Montreal. The arrangements concerning this credit were originally oral, but were confirmed by letters, the first two of which constitute the alleged contract relied upon in this suit. The first letter, written in New York by Linares, is as follows:

"June 8, 1916.

"Sucesores de Bianchi, Mayaguez, Porto Rico—Dear Sirs and Friends: I am pleased to confirm the negotiations with you, through your esteemed gentleman and friend of mine, Don Juan Bianchi, relative to the purchase of the Central Coloso, in Porto Rico, with my co-operation, and so far as I am concerned I stand ready to fulfill my obligations and carry through this negotiation, so skillfully conducted by Don Juan Bianchi, whom I congratulate on this opportunity.

"Besides the sympathies which I feel for Don Juan, which reflect on you, I must sincerely confess that my participation in a negotiation of this nature in Porto Rico, is due to my good wishes toward our friend Mr. Manuel Luzunaris, and in furtherance of this feeling I hereby grant and assign to said party 50 per cent. of my profit on this business, consisting of 10 per cent. on the profits of the Central Coloso, as heretofore agreed with Don Juan.

"By virtue of this purchase, and for greater facility in fixing the legal requisites necessary, I would suggest that a corporation be organized here

with a small nominal capital, and thus make the proper distribution of shares, prior to the transfer of the title, and you may forward immediately to Don Juan a power of attorney, with sufficient powers, should he lack the same, provided my proposition be agreeable to you.

"Yours truly, Julian Linares."

This was handed to Juan Bianchi, and a reply, written, apparently in English, by Luzunaris for Juan Bianchi, and signed by him with the name of the defendant firm, was as follows:

"June 8, 1916.

"Sr. Don Julian Linares, City—Dear Sir and Friend: 'Central Coloso.' We beg to acknowledge receipt of your favor of yesterday, delivered to the undersigned, and besides our gratefulness for your assistance in this negotiation, I avail myself of this opportunity to thank you most heartily for your flattering phrases.

"We also confirm the agreement with you to cede you a 10 per cent. share in the business. if it is carried out, and in regard to the organization of the corporation, this will be dealt with, once that the business has been carried out.

"With reference to the division of your share, we will be pleased to carry it out in accordance with your instructions, and we are glad that you have assigned 50 per cent., out of your 10 per cent., or one-half thereof, to Mr. Manuel Luzunaris, for whom we also feel the highest regard.

"Very truly yours and friends, Sucs. De Bianchi."

On the next day Linares delivered to the bank his letter of guaranty, as follows:

"June 9, 1916.

"Messrs. The Royal Bank of Canada, New York, N. Y.—Dear Sirs: In accordance with the agreement and in order to be able to carry into effect the purchase of the Central Coloso, in Porto Rico, by Messrs. Sucesores de Bianchi, with my co-operation and with credit opened by you for $370,000 to meet the first payment, against collateral furnished by said parties, estimated worth $177,000. plus the sugars from said Central and the personal liability of the gentlemen who constitute said firm, I hereby guarantee you against actual loss in this transaction, and submit herewith my signature for the purpose, begging you to hold confidentially this guaranty and eliminate my name in the course of the negotiations with said Messrs. Sucesores de Bianchi.

"Yours very truly, Julian Linares."

The bank confirmed its oral arrangements for credit to the defendants by the following letter:

"New York, June 8, 1916.

"Mr. Juan Bianchi, New York City—Dear Sir: With reference to our conversation, we have received authority to make you an advance of $370,000, to meet the first payment on purchase of Central Coloso. It is our understanding that this note will bear interest at the rate of 8 per cent., and will be signed by Sucs. de Bianchi and indorsed individually by Francisco Bianchi, Juan Bianchi, and Miguel E. Planes. As security you will furnish various bonds, estimated worth $177,000, a contract for sugar of crop 1917–1918, and title deeds to the property, subject to the lien guaranteeing deferred payments in favor of the former owners. Sugars to be sold through the Sugar Sales Corporation.

"Yours very truly, C. E. McKenzie, Agent."

It will be observed that this letter contains no reference to any actual or prospective guaranty by Linares.

Three days later, on June 12, 1916, the defendant Juan Bianchi wrote the bank as follows:

"Messrs. The Royal Bank of Canada, New York—Dear Sirs: In accordance with the conversation which I had with you this morning, I hereby confirm that the guaranty which Mr. Julian Linares had offered me, in case that you should consider it necessary in order to carry out the business of the purchase of Central Coloso, has been canceled.

"Upon further cable advice from Porto Rico, in connection with this transaction, I will call on you, and we hope, in pursuance of our agreement, that there remains open and at our disposal at your offices in San Juan, Porto Rico, a credit for the sum of three hundred and seventy thousand dollars ($370,000) guaranteed by our securities, provided we receive confirmation of the deal from Paris.

"We again thank you for the attention and confidence you have bestowed upon us, and beg to remain.

　　"Very truly yours,"

On June 14, the bank wrote Linares as follows:

"Dear Sir: We are in receipt of your letter of the 9th inst., and since then we have been informed by Mr. Bianchi that the guaranty offered by you is canceled.

　　"Respectfully,　　　　　　　　　　　　　　　　E. W., Agent."

The following excerpts from cablegrams also throw light upon the situation and upon the minds of the parties:

　　　　　　　　　　　　　　　　　　　　　　　"New York, June 6, 1916.

"Sent to Bianchi, Mayaguez:

"* * * Can you extend time for option?"

　　　　　　　　　　　　　　　　　　　　　　　"New York, June 6, 1916.

"Sent to Bianchi, Mayaguez:

"Propose the following: Consider a good purchase payment; on delivery $370,500. * * * Must make a deposit of our security. Advise me if you agree. Are working the business and have every prospect of success?"

　　　　　　　　　　　　　　　　　　　　　　　"New York, June 8, 1916.

"Sent to Bianchi, Mayaguez:

"Try to get option extended till Tuesday."

　　　　　　　　　　　　　　　　　　　　　　　"New York, June 8, 1916.

"Sent to Bianchi, Mayaguez:

"The guaranty is not sufficient—cannot do the business unless we accept—Mr. Linares from Cuba interested 10 per cent. profits. Direction our control—Advise acceptance by telegraph. Feel certain closing. Market is advancing, and looks like going higher next year."

　　　　　　　　　　　　　　　　　　　　　　　"New York, June 8, 1916.

"Sent to Bianchi, Mayaguez:

"Royal bankers have opened credit. $370,000 on our collateral excluding cash. If you will agree to the conditions. Linares has guaranteed transaction. You can close at once. Confirm condition. Bank have sent telegram to San Juan. Will open a credit. Please apply."

　　　　　　　　　　　　　　　　　　　　　　　"San Juan, P. R., June 9.

"Juan Bianchi, Hotel Brevoort, New York:

"Purchase closed. Almost sure will be able to make operation Royal here. Call on Royal to-morrow morning there. They expect you. We do not deem necessary nor suitable intervention Linares.　　　　　　　　　Paco."

We again observe that there are many inconsistencies in the record, in what purport to be copies of the same documents as well as in some of the dates appearing on them. The cablegrams are also blind, and obviously defective in punctuation. In this opinion we have taken as accurate the copies, so far as they appear, set forth in the opinion of the court below. But elsewhere in the record and in the briefs we find dif-

ferent renditions of the same documents. Very likely these inconsistencies arise out of translation. They are not sufficiently serious to raise doubts as to the general conclusion.

A few days later than this last cablegram—apparently between June 12 and June 27—the defendants ascertained that the owners in Paris refused to sell at the price contemplated. The fair inference is that the defendants had no valid outstanding option at the price of $700,000, or at any other price. The credit at the bank for $370,000 was accordingly canceled. The trade then under consideration was never made.

But in the late summer one of the other defendants, Francisco Bianchi, went to Paris, opened direct negotiations with the owners, and finally in October, 1916, bought Central Coloso for $1,500,000—obtaining at that time credit from the Royal Bank of Canada for $500,000. But with these later negotiations and the resulting necessary financial arrangements the plaintiffs had nothing whatever to do.

The plaintiffs contend that the deposit of Linares' letter of June 9, 1916, with the bank, followed by the purchase of the Coloso in October of that year, entitled the plaintiffs to the conveyance of the 10 per cent. interest referred to in the two letters of June 8.

Plaintiffs do not, and obviously could not successfully, contend that the purchase in October was in any way dependent upon Linares' short-lived guaranty to the bank in June. It is, in effect, conceded that the financing of the October purchase had no connection with the plaintiff's services to the defendants in June. Plaintiffs did not even introduce defendants to the bank. The defendants had, for a previous purchase, borrowed of this same bank, and their standing with it was excellent. Plaintiffs ground this claim, as they obviously must, on their interpretation of the letters, as a written contract, construed with reference to the subject-matter and in the light of the surrounding circumstances.

The plaintiffs' argument is in substance that defendants agreed with plaintiffs that, in consideration of Linares' guaranty to the bank and the other trifling services rendered by plaintiffs, defendants would, if they ever bought Central Coloso, convey one-tenth to plaintiffs. We are unable to adopt this view. It does not accord with the fair meaning of the language used, interpreted in the light of the circumstances surrounding the parties. The language in Linares' letter, congratulating Juan Bianchi, and suggesting incorporation as a means of effecting the deal, implies a present or almost immediate completion of the trade on terms then supposed to be fully understood.

But there is no room for doubt as to the meaning of Juan Bianchi's acceptance. The vital part is:

"We also confirm the agreement with you to cede you a 10 per cent. share in the *business* [elsewhere stated or translated as *'negotiation'*], if it is carried *out* [elsewhere 'through'], and in regard to the organization of the corporation, this will be dealt with, once that the business has been *carried out* [elsewhere 'once that the negotiation has been *realized*']."

The words "negotiation [or business], *if it is carried out* [*or through*]" mean, we hold, the pending negotiation, for an almost im-

mediate purchase, under a short-lived option supposed to be outstanding, for the very advantageous price of $700,000 or less. The words "*if it is carried through*" explicitly conditioned Bianchi's acceptance upon the actual accomplishment of a definite and perfectly well-understood proposed trade, to effect which he (Juan Bianchi) had come to New York for funds. Juan Bianchi had no intention of binding himself or his firm, if the "negotiation" was *not* carried through. His letter was not a blanket agreement to grant to the plaintiffs a 10 per cent. interest in Central Coloso, if ever, for any price, financed on any security, the defendants became its owners. Neither the language used nor the surrounding circumstances are consistent with a purpose to bind his firm or himself to any such broad, general, persisting, unnatural, and embarrassing agreement. His was merely an undertaking to pay a very large consideration for immediate, very valuable, help to obtain a large sum of money then necessary to enable his firm to close, forthwith, a most advantageous trade, assumed to be otherwise unavailable. He was ready to pay generously for such immediate help to get cash, because *quick* money, as he reasonably believed, meant large profits otherwise unattainable. But Juan Bianchi never contemplated a *quasi* partnership with Linares and Luzunaris, on any other deal than the one then under consideration for the purchase of the Coloso at $700,000 or less. It was *that* deal, at *that* time, concerning which he wrote. That deal was never made. Therefore there was no promise to convey 10 per cent. interest to the plaintiffs.

We have not overlooked the plaintiffs' contention as to the continuity of the negotiations until the property was finally bought in October, 1916, for $1,500,000. But, even if it be true, as the court below found, that it is not "clear that the subsequent transaction by which the defendants bought the Central Coloso did not grow out of the original deal," this means nothing more than that defendants and the owners of Central Coloso continued higgling until a price more than double the price named in the supposed—but apparently invalid and worthless—option was agreed upon. We repeat that the "negotiation" or "business" referred to in the letters of June 8 was a negotiation for closing on an option of $700,000 or less. Plaintiffs' position under this rather narrow written contract is radically different from that of the broker who produces the person who ultimately becomes the desired purchaser, even if on terms much modified.

Careful consideration of all the evidence forces us to the conclusion that the subsequent purchase by the defendants of the Central Coloso was, so far as the plaintiffs were concerned, an entirely separate and distinct transaction, and not the subject-matter of the contingent agreement between the parties on June 8, 1916. Without any fault on the part of the defendants, and entirely contrary to their wish, the supposed option from the owners of the Coloso to the defendants ended or was found nonexistent in June, 1916. With the end or discovered nonexistence of that option ended all contingent right of the plaintiffs arising under the language of the letters of June 8.

As this conclusion disposes of the whole case, it is unnecessary for

us to consider whether Juan Bianchi's acceptance of June 8, in the name of his firm, of Linares' proposition, was conditioned upon ratification by his firm in Porto Rico. The latter part of Linares' own letter indicates that Linares supposed that his proposition addressed to the firm must be reported for its acceptance or rejection. But we hold that, assuming that Juan Bianchi had full power to accept, the acceptance was so conditioned that, on the facts as they turned out, neither he nor his firm was bound.

We think it should, however, be added, that we agree with the court below that the defense of fraud is not made out. There is no substantial evidence of any fraudulent or otherwise unfair dealing by the plaintiffs.

The decree of the District Court is affirmed, with costs to the appellees in this court.